## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

JULIAN MORENO,

            Plaintiff,

    V.                                                   Case No. 10-CV-1097 WJ/ACT

TAOS COUNTY BOARD OF
COMMISSIONERS, DEPUTY CARLOS
ARCHULETA, in his individual capacity,
DEPUTY PAUL GARCIA, in his individual
capacity,

            Defendants.

## MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR INSTRUCTION TO THE JURY THAT IT MAY DRAW AN "ADVERSE INFERENCE' AGAINST DEFENDANTS FOR FAILING TO RECOVER DATA FROM THE TASER USED AGAINST PLAINTIFF

THIS MATTER comes before the Court on Plaintiff Julian Moreno's Motion for

Instruction to the Jury That It May Draw an "Adverse Inference" Against Defendants for Failing

to Recover Data from the Taser Used Against Plaintiff **(doc. 154)**, filed January 18, 2013.  The

Court finds that Defendant's motion is not well taken and shall be **DENIED**.

Plaintiff has filed claims for battery, unreasonable search and excessive force, and

negligent hiring, training, and supervision against Defendants arising from an incident where

Deputy Carlos Archuleta tased him after arresting him for drunk driving.  The parties dispute,

among other things, whether Archuleta tased Plaintiff once or three times, and the effects of that

tasing.  The taser used has the capability to record any activation of the trigger, whether the

machine is used in dart mode or drive-stun mode.[1]  Here, the Taos County Sheriff's Department

---

[1] Tasers operate in two possible modes.  In "dart mode," the taser is loaded with a cartridge and fires two barbs at the subject.  The barbs penetrate a subject's clothing or skin, and remain attached to the taser by thin wires 15 to 35 feet in length.  The device then delivers high voltage, low current electricity through the subject's muscles, causing temporary loss of control of those muscles, or "Neuromuscular Incapacitation" ("NMI").  This temporary incapacitation allows officers to approach and subdue a suspect.  In "drive stun mode," the taser cartridge containing the barbs and wires has been either removed or already discharged.  The user applies the taser probes directly to the subject, which causes pain at the site of contact, but does not cause NMI.  Pain continues only as long as the taser is in direct contact with the subject.  Defs.' Resp. to Pl.'s Mot. for Summ. J., Ex. 2 (doc. 161-2, at 2).  It is undisputed

did not preserve any such record from the taser, photograph the taser, book the taser and its

cartridge into evidence, or photograph the taser impact sites on Plaintiff's body.  Plaintiff argues

that these failures constitute spoliation, and therefore the jury should be instructed that it may

infer that the record of the taser's use would have been unfavorable to Defendants.

An adverse inference instruction for spoliation of evidence requires the moving party to

prove three elements: (1) that the nonmoving party had a duty to preserve the evidence because

it knew or should have known that litigation was imminent; (2) that the moving party was

prejudiced by the destruction of the evidence; and (3) that the nonmoving party acted in bad

faith.  *Turner v. Pub. Serv. Co. of Colorado*, 563 F.3d 1136, 1149 (10th Cir. 2009) (citing

*Burlington N. & Santa Fe Ry. Co. v. Grant*, 505 F.3d 1013, 1032 (10th Cir.2007)).  "Mere

negligence in losing or destroying records is not enough because it does not support an inference

of consciousness of a weak case."  *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1407 (10th Cir.

1997).

Plaintiff's motion fails because he has not proven that Defendants acted in bad faith.  He

argues that Defendants clearly acted in bad faith because they failed to (1) immediately report

the use of the taser to the appropriate supervisor; (2) complete a full Offense Incident Report,

including a supplemental report by the officer involved; (3) collect and book the taser, probes,

and cartridge into evidence; or (4) photograph the site of taser impact, all in violation of the Taos

County Sheriff Department's policies and procedures governing taser use.  Pl.'s Reply, Ex. B at

4 (doc. 170-2, at 2).  The Court disagrees.  The specific policies to which Plaintiff refers are

labeled "Responsibilities After Taser Discharge."  *Id.* (Section E).  Michael Tafoya, a taser

instructor for the County Sheriff's Department, and Sheriff Miguel Romero both testified that

the Department defines "discharging" a taser as using the taser in dart mode, when the cartridge

---

that the taser here was used only in drive-stun mode.

is discharged.  Defs. Resp. Opposing Pl.'s Mot., Ex. 2 at 18 (doc. 162-2, at 5); *id.*, Ex. 3 at 63

(doc. 162-3, at 2).  Archuleta also testified that he understood the policy to require logging the

taser and cartridge into evidence only when the cartridge had been used.  Because using the taser

in drive-stun mode does not "discharge" the taser or use the cartridge, Archuleta's use of the

taser does not fall under the policies Plaintiff has cited.[2]  Although Plaintiff is correct that the

taser has the ability to record use in both dart and drive-stun modes, Department policies do not

require preservation of those records when, as here, it is used without a cartridge.  Defs.' Mot.

for Summ. J., Ex. 3 (doc. 155-1, at 18-19); Pl.'s Reply, Ex. C at 100-01 (doc. 170-3, at 4-5).

Further, Archuleta submitted a Supplemental Report describing his use of the taser within days

of the incident.  Therefore, Plaintiff has submitted no evidence that shows the failure to preserve

evidence was in bad faith, as opposed to mere negligence.

Plaintiff's argument that law enforcement officers have a constitutional duty to preserve

evidence does not compel a contrary conclusion, because the cases that Plaintiff cites address

evidence potentially exonerating a defendant for a charged offense, not evidence favoring a

plaintiff in a civil suit against the department.  *See Arizona v. Youngblood*, 488 U.S. 51, 53-55

(1988) (addressing failure to preserve semen and DNA evidence that could potentially exonerate

---

[2] Plaintiff also argues that Archuleta violated a number of other Department policies for taser use: Section B(5)(b) and (c), proscribing taser use against a suspect who is handcuffed or detained in the back of a police vehicle; Section D(3), requiring an officer to call a number of supporting officers to the scene prior to discharging the taser; Section D(4)(a)-(d), mandating additional procedures for taser discharge; and Section D(5), requiring an officer to notify dispatch before discharging a taser.  However, the policies in Section D are guidelines, not absolute rules, and address the use of a taser in dart mode with the cartridge engaged.  Defs. Resp. Opposing Pl.'s Mot., Ex. 1 at 3 (Doc. 162-1, at 3) (explaining that one officer should "fire" the taser, and that if another officer is not available, that officer "should be prepared to fire a second cartridge in the event that the initial cartridge misses the target . . .", and noting that "[u]nder exigent circumstances, nothing in this policy prohibits an officer from deploying and firing a Taser without requesting or having the presence of additional officers").  Thus, these policies do not apply to Archuleta's use of the taser in drive-stun.  And while Archuleta appears to have violated Section B(5)(b) and (c), these sections of the policy does not impose a duty to preserve evidence, and Archuleta documented his actions that violated the policy in his Supplemental Report.

defendant charged with sexual crimes); *Stephens v. Jones*, 385 Fed. App'x 798, (10th Cir. 2010) (addressing failure to preserve recording of interview with defendant charged with assault).[3]

Further, Plaintiff's motion also fails because he has not proved that Defendants were aware or should have been aware that litigation might be imminent when the evidence would have been preserved.  In particular, Plaintiff has failed to show affirmatively when or how the Sheriff's Department failed to preserve or destroyed the taser evidence.  It is clear that Archuleta and Garcia did not tag the taser into evidence after the incident, but there is no evidence that at that time they were aware litigation might be pending.  The earliest verified date at which the Defendants could have been put on notice of potential litigation was September 8, 2009, when Plaintiff sent a notice of Intent to File Formal Tort Claim to the Taos County Board of Commissioners, or nearly three months after the incident.[4]  Plaintiff has offered no evidence that records from a taser would otherwise be kept throughout that time.  Plaintiff's argument would essentially require that a law enforcement office be on notice of pending litigation for an excessive force claim from the moment any force is exercised, which is further than this Court is willing to extend the spoliation doctrine.

Accordingly, the Court hereby **DENIES** Plaintiff's Motion for Instruction to the Jury That It May Draw an "Adverse Inference" Against Defendants for Failing to Recover Data from the Taser Used Against Plaintiff **(doc. 154)**.

**SO ORDERED.**

---

[3] Plaintiff also cites *State v. Chouinard*, 634 P.2d 680 (N.M. 1981) for the proposition that the police have an affirmative duty to preserve evidence.  However, *Chouinard* holds only that where there is a duty to preserve evidence, and the state intentionally breaches that duty, a conviction must be overturned if the defendant can also show that the destroyed evidence was material and its absence was prejudicial.  *Id.* at 683.  It does not create an independent duty for the state to preserve any and all evidence.

[4] Archuleta did not know about the litigation until he was served with the complaint in August 2010.  Deputy EugeneHolgate, who is not a defendant, stated that he "saw [Plaintiff] once at our old office," but could not remember how soon after the incident this occurred, and Plaintiff does not explain why seeing him at the office should have put Holgate on notice of a possible lawsuit.  Pl.'s Reply, Ex. D at .48 (doc. 170-4, at 5).  Undersheriff Eduardo Romero testified that Plaintiff came to his office to complain about the tasing, but could not provide a date for this conversation, only that it occurred after Plaintiff was released from jail.

_____

UNITED STATES DISTRICT JUDGE