IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

---

JULIAN MORENO,

        Plaintiff,

V.                                                   Case No. 10-CV-1097 WJ/ACT

TAOS COUNTY BOARD OF COMMISSIONERS,
DEPUTY CARLOS ARCHULETA,
in his individual capacity, DEPUTY PAUL GARCIA,
in his individual capacity,

        Defendants.

## MEMORANDUM OPINION AND ORDER IMPOSING SANCTIONS

THIS MATTER comes before the Court following a hearing, held on July 12, 2013, regarding the Court's Order to Show Cause on the Matter of Sanctions (**Doc. 259**), issued on May 13, 2013.  In that order, the Court required Plaintiff, Julian Moreno, and Defendants, Taos County Board of Commissioners, Deputy Carlos Archuleta, and Deputy Paul Garcia, to show cause why Plaintiff and/or his counsel, Joseph Kennedy,[1] should not be sanctioned for pursuing Plaintiff's claim against Defendants, despite the withdrawal of Plaintiff's damages expert and the decision that Plaintiff would not testify at trial and consequent conceding of Defendants' account of events.  For the reasons given below, the Court now imposes sanctions against both Moreno and Kennedy.

### BACKGROUND

According to evidence presented at trial, on June 13, 2009, Moreno and his wife were in the wife's SUV at a highway rest stop in Taos County.  They got into a fight, and the wife left

---

[1] Although both Shannon and Joseph Kennedy appeared in court on this matter and signed various pleadings, Joseph Kennedy responded to the Order to Show Cause and stated that he alone made all decisions about trial strategy and evidence.  Doc. 267 at 3.

their vehicle and approached witnesses at the rest stop, "screaming for help." Doc. 155-1 at 1. Moreno followed his wife, berating her, and when the witnesses tried to calm him, he told them he had a gun in his jacket pocket and would shoot them if they did not leave him and his wife alone. When one of the witnesses told Moreno he knew Moreno did not have a gun, Moreno confessed that the "gun" was a pair of sunglasses. He then jumped into the SUV and drove away. After a short time, however, he drove back to the rest stop and made a left turn directly into oncoming traffic, causing a crash with another vehicle. He exited the SUV, and had to be physically restrained from climbing into other witnesses' cars. He also proceeded to tell the witnesses that his wife, not he, was driving the SUV at the time of the accident. When one witness told him that was untrue, Moreno tried to hit him. Moreno then stopped a woman driving a small truck, jumped in the back, and tried to leave the scene of the accident. Two witnesses followed in their own truck and ultimately flagged down the other driver, took Moreno from the back of the truck, and restrained him on the side of the road until deputies from the Taos County Sheriff's Department arrived. Deputy Carlos Archuleta found Moreno at the side of the road, handcuffed him, and put him in the back of his patrol unit, a pickup truck with an extended cab. Archuleta observed that Moreno smelled strongly of alcohol, and that he needed assistance walking to the patrol unit. Moreno also told him that he had been drinking for three days and was very drunk.

At this point, accounts diverge. According to Defendants, after Archuleta returned to the accident scene, Moreno became combative and belligerent, yelling and banging his head against the metal screen separating the front and back seats of the police vehicle. He calmed down once at the deputies' request, but soon started yelling and banging his head again. When Archuleta and Deputy Paul Garcia opened the door to the truck and tried to calm him, Moreno would not

2

stop, and kicked and spat at the deputies. Therefore, after warning Moreno that he would be tased if he did not calm down, Archuleta tased Moreno once with Garcia's taser, used in drive-stun mode,[2] and Moreno became quiet.

However, Moreno disputed this account. According to the Complaint and his deposition testimony, Moreno was sitting peacefully in the back of the truck, doing nothing, when Archuleta tased him three times for no reason. (Moreno does not dispute that the taser was used in drive-stun mode.) As a result, according to Moreno, he incurred significant long-term psychological, cognitive, and economic damages, including PTSD, traumatic brain injury, and complete inability to work.

During the discovery process, Moreno repeatedly failed to produce evidence of economic damages requested by Defendants during the discovery process, claiming that he had produced all relevant documents that he possessed. Accordingly, on June 27, 2012, this Court adopted Magistrate Judge Alan C. Torgerson's Report and Recommendation (Doc. 100) precluding Moreno from offering any additional evidence of economic damages. Doc. 110. Based on the evidence provided by that point, this Court granted Defendants' subsequent Motion for Summary Judgment on Economic Damages (Doc. 152) in an order (Doc. 185), issued April 19, 2013.

Defendants made an Offer of Judgment to Moreno for $35,001.00 on November 3, 2011, but that offer was refused.[3] In his deposition, taken on December 12, 2012, Moreno claimed that

---

[2] Tasers operate in two possible modes. In "dart mode," the taser is loaded with a cartridge and fires two barbs at the subject. The barbs penetrate a subject's clothing or skin, and remain attached to the taser by thin wires 15 to 35 feet in length. The device then delivers high voltage, low current electricity through the subject's muscles, causing temporary loss of control of those muscles, or "Neuromuscular Incapacitation" ("NMI"). This temporary incapacitation allows officers to approach and subdue a suspect. In "drive stun mode," the taser cartridge containing the barbs and wires has been either removed or already discharged. The user applies the taser probes directly to the subject, which causes pain at the site of contact, but does not cause NMI. Pain continues only as long as the taser is in direct contact with the subject. Doc. 161-2 at 2.

[3] Because Moreno ultimately received a judgment less favorable than that proposed in the Offer of Judgment, pursuant to Fed.R.Civ.P. 68(d), the Court has assessed all costs subsequent to the Offer of Judgment against Moreno (Doc. 272).

he was entitled to $5 million for his alleged damages. In support of these damages, Moreno offered an expert report by Dr. Gilbert Kliman, M.D., a psychiatrist.

Both parties filed motions for summary judgment on January 18, 2013: Defendants argued that they were entitled to summary judgment on qualified immunity grounds (Doc. 155). Moreno argued that he was entitled to summary judgment because it is unreasonable as a matter of law to use a taser on a person detained in handcuffs and secured in the backseat of a police vehicle, and because Archuleta had violated internal Sheriff's Department guidelines proscribing using a taser on someone handcuffed or detained in a police vehicle (Doc. 153). The Court denied both motions in an order filed April 5, 2013, in large part because there were disputed issues of material fact that only a jury could reconcile (Doc. 180). The Court also rejected Moreno's argument that the tasing was unreasonable as a matter of law, finding that the facts of the cases on which he relied were too dissimilar to support the argument, and that the Tenth Circuit has held that law enforcement officer violation of internal department policies does not prove a violation of the Fourth Amendment.

On April 23, 2013, the morning of a *Daubert*[4] hearing to determine the admissibility of Dr. Kliman's expert opinion testimony and before the Court heard any testimony or argument, Kennedy announced that Moreno was withdrawing Kliman as an expert witness. On April 28, 2013, Kennedy informed Defendants' counsel that Moreno had reduced his demand to $600,000, which Kennedy acknowledged "still reflected unrealistic expectations on my client's part." Doc. 216-8. At Kennedy's request, Defendants rejected Moreno's demand for $600,000 in writing, but offered $35,000 in return to facilitate further settlement negotiations (Doc. 261-9). Moreno did not immediately respond.

At a motions hearing on May 2, 2013, Kennedy stated that Moreno was no longer claiming damages for the alleged long-term psychological and cognitive injuries caused by the tasing. Instead, he would seek damages only related to his pain and suffering on the date of incident. Following the motions hearing, Kennedy verbally advised Defendants that Moreno would accept a settlement of $400,000. The next day, he stated in an e-mail sent to Defendants' counsel that he had authority to offer a settlement of $450,000. (Doc. 261-10, at 1.) Defendants' counsel responded that her clients would not negotiate further unless Moreno offered below $100,000, and no further settlement discussions occurred.

The case proceeded to trial on May 6, 2013. On the morning of trial just before jury selection, Kennedy informed Defendants and the Court that Moreno would not testify, and withdrew Moreno's deposition testimony. Consequently, only Defendants' account of events was offered to the jury. At the conclusion of trial the jury found for the Defendants.

## ANALYSIS

### I. Sanctions Against Plaintiff Under § 1988

---

[4] *Daubert v. Merrell Dow Pham., Inc.*, 509 U.S. 579 (1993).

First, under 42 U.S.C. § 1988, the Court imposes sanctions against Moreno for attorney's fees incurred by Defendants after April 23, 2013, the date on which Moreno withdrew the testimony of Dr. Gilbert Kliman, M.D., his damages expert.

42 U.S.C. § 1988 provides that in an action or proceeding to enforce § 1983, a district court, "in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs." *See also Steinert v. Winn Grp., Inc.*, 440 F.3d 1214, 1222 (10th Cir. 2006) ("[Section] 1988 is not available against attorneys."). "A plaintiff should not be assessed his opponent's attorney's fees unless a court finds that his claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so." *Christianburg Garment Co. v. EEOC*, 434 U.S. 412, 422 (1978). The Tenth Circuit has emphasized that a defendant can recover if the plaintiff violates this standard at *any* point throughout litigation. *Thorpe v. Ancell*, 367 F. App'x 914, 919 (10th Cir. 2010) (citing *Galen v. County of Los Angeles*, 477 F.3d 652, 666 (9th Cir. 2007) and *Munson v. Milwaukee Bd. of Sch. Dirs.*, 969 F.2d 266, 271 (7th Cir.1992) ("It is possible for an initially nonfrivolous action to become frivolous when, for example, the factual basis supporting the complaint is shown to be groundless during discovery."). Subjective bad faith on the plaintiff's part is not required. *Christianburg Garment Co.*, 434 U.S. at 421.

Here, Moreno's damages claims became unreasonable after his expert witness was withdrawn.[5] Although the Court does not intend to minimize the pain and suffering that being tased can cause, in the absence of Kliman's testimony that Moreno incurred long-term injuries as a result of being tased, Moreno had no basis for his demands. His commitment to those demands caused him to refuse to negotiate reasonable settlement offers, and forced Defendants to take this

---

[5] The Court refers only to Moreno's direct damages, and does not address the punitive damages that Moreno sought against Taos County on the negligent hiring, training, and supervision claims. Because the jury found that no battery had occurred, the negligent hiring, training, and supervision claims were rendered moot.

case to trial – a trial that turned out to be completely and totally devoid of any merit regarding Plaintiff's claims.  The Court recognizes that county law enforcement agencies regularly face excessive force lawsuits and that defending against those suits is, in many respects, a cost of doing business.  In imposing sanctions against Moreno, the Court does not intend to protect counties from that cost when actions are brought in good faith and with a legitimate basis in the facts and the law.  However, in the present case, Moreno's refusal to entertain realistic settlement offers required Defendants to defend this case long after it became groundless.  Moreover, Kennedy's subsequent trial strategy decision not to call Moreno as a witness only exacerbated this problem by removing what would have been the only source of admissible evidence to support a jury award for pain and suffering or even nominal damages.

Accordingly, the Court orders Defendants to submit a bill of attorneys's fees incurred after April 23, 2013, when Moreno withdrew Dr. Kliman's testimony.  Plaintiff may file objections within ten days of the submission of the bill.  Subsequently, the Court will enter judgment against Moreno for fees.

**II.    Sanctions Against Counsel**

Second, the Court also imposes sanctions against Joseph Kennedy for the jury costs associated with trial in this case.[6]  The Court recognizes that Joseph Kennedy is an experienced, well-respected civil rights lawyer.  However, the Court feels an obligation to help preserve court resources by discouraging future litigation of groundless claims.

The Tenth Circuit has concluded that "in cases where an attorney's conduct . . . wastes the jury's time, a district court is well within its discretion to assign jury costs to the attorney.  In fact, we held that in such cases, courts should assign costs 'where the fault lies.' " *Sally Beauty Co., Inc. v. Beautyco, Inc.*, 372 F.3d 1186, 1189-90 (10th Cir. 2004) (quoting *In re Baker*, 744

---

[6] At the hearing on this matter, Kennedy represented that his firm was willing to pay all jury costs.

F.2d 1438, 1440 (10th Cir.1984)); *see also United States v. Mottweiler*, 82 F.3d 769, 772 (7th Cir. 1996) ("Costs should fall on those whose carelessness creates them, the better to induce people to take care. The public fisc should not be saddled with expenses that counsel could have averted by taking simple precautions.").

Here, the case survived summary judgment only because there were contested issues of material fact. Kennedy's decision not to have Moreno testify, and to withdraw Moreno's deposition testimony, conceded all contested issues of fact. Had Moreno's testimony never been offered, this case would have been disposed of in the Defendants' favor much earlier at the summary judgment stage.[7]

Kennedy argues that even under the Defendants' account of events, the case was not groundless, because he made good faith arguments that (1) tasing an intoxicated, restrained defendant is per se unreasonable due to risk of death, and (2) the Tenth Circuit's precedent excluding police department standard operating procedures and policies from cases alleging Fourth Amendment violations is erroneous and should be overturned. The Court recognizes the importance of these issues; however, it also finds that the case at issue did not provide the hoped-for grounds for extending these arguments. The cases on which Kennedy relied to argue that tasing a restrained, intoxicated defendant is per se unreasonable did not involve the use of tasers in drive-stun mode on a person handcuffed in the back of a vehicle, but the use of physical restraints placing pressure on the back of a defendant who is face down on the ground, resulting in positional asphyxia. *See Cruz v. City of Laramie, Wyo.*, 239 F.3d 1183, 1186 (10th Cir. 2001)

---

[7] The Court took under advisement Defendants' Rule 50 motion on all claims, submitted after Moreno rested his case in chief, but allowed the jury to consider them in order to avoid appellate issues. However, had the jury found in Moreno's favor, the Court would have granted Defendants' Rule 50 motion based on Moreno's utter failure to present a prima facie case. The Court also notes that at the close of Moreno's case, Moreno agreed that Defendants' Rule 50 motion should be granted as to Defendant Garcia, who was dismissed from the case prior to submission of the case to the jury (Doc. 273).

(where suspect, high on cocaine, died after being "hogtied" during arrest, or having his ankles tied to his wrists behind his back, the Tenth Circuit concluded that hogtying an individual with diminished capacity constitutes excessive force); *Giannetti v. City of Stillwater*, 216 F. App'x. 756, 760 (10th Cir. 2007) (where a woman with bipolar disorder died in a physical altercation during booking, after being restrained face down on the floor by officers placing their knees on various parts of her back; the court concluded that that officers should consider a detainee's mental health when using force against him or her, but that the force used was not excessive). Therefore, the risk of death in the cases Kennedy cites is not applicable to the present case.[8]

Further, although the Tenth Circuit has held that law enforcement officers should consider a defendant's mental health when using force against him or her, the defendants in the cases Kennedy cites presented very differently than Moreno presented. In *Cruz*, the suspect was found standing on an apartment building landing, naked, jumping up and down and yelling, and had to be forcibly restrained. 239 F.3d at 1186. In *Giannetti*, the suspect was in the midst of a bipolar episode, spoke nonsensically, and the police, who knew her, were aware she had bipolar disorder. 216 F. App'x. at 758. Although clearly intoxicated, Moreno does not appear to have been incoherent, irrational, or unaware of what was going on around him.

Finally, if Kennedy wished to use this case to challenge the purely legal issue of Tenth Circuit precedent regarding admission of law enforcement entity policies, he could have done so without groundlessly prolonging the process by offering testimony he ultimately had to withdraw. Requiring the Court to incur unnecessary jury costs is especially inappropriate during this time of budgetary constraints and furloughs, when the Court has already been forced to limit the days on which it holds criminal trials and hearings to reduce costs.

---

[8] The Court also notes that none of the proposed expert evidence in this case suggested that using a taser in drive-stun mode poses a risk of death; any studies suggesting a risk of death involved using a taser in dart stun mode, which has different physiological effects than a taser used in drive-stun mode.

9

Accordingly, this Court assesses all jury costs incurred at trial against Joseph Kennedy. The Court ordered the Jury Administrator to provide a listing of jury costs (Doc. 270), which amount to a total of $3,652.40, or $2,806.74 for day one, $422.83 for day two, and $422.83 for day three. (Doc. 271-1).

## CONCLUSION

For the foregoing reasons, the Court hereby orders that:

Defendants submit a bill of attorney's fees incurred after April 23, 2013, by Wednesday, August 7, 2013, to which Plaintiff Julian Moreno may offer objections within ten days, and after which the Court will enter judgment against Moreno for those fees determined to be reasonable; and

Attorney Joseph Kennedy, shall pay all jury costs incurred at trial.

**SO ORDERED.**

_____
UNITED STATES DISTRICT JUDGE